**Durad MOORE, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12359.**

Criminal Court of Appeals of Oklahoma.

Jan. 9, 1957.

Lloyd G. Larkin, Tulsa, J. B. Beaird, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Durad Moore was charged in information filed in the court of common pleas of Tulsa County with the offense of operating a motor vehicle upon a public highway while under the influence of intoxicating liquor. The case first came on for hearing on a motion of the defendant to suppress the evidence. After hearing thereon, it was stipulated that the case would be submitted on the merits on the evidence taken on the motion to suppress. The trial judge entered judgment finding defendant guilty as charged, and fixed punishment at a fine of $75, and ten days confinement in the county jail.

For reversal defendant urges:

"(1) That the verdict is not sustained by sufficient evidence, and is contrary to law.

"(2) That the verdict is contrary to the law in that the court erred in overruling defendant's motion to suppress the evidence on the ground that the same was obtained without any legal authority and that the arrest of defendant and the search and seizure of defendant and defendant's automobile was an unlawful violation of defendant's rights as guaranteed him by the laws of the Constitution of the State of Oklahoma."

Counsel then cites the familiar Article II, § 30 of the Oklahoma Constitution, involving searches and seizures, and 22 O.S. 1951 § 196 covering arrests.

We have carefully read the record and briefs herein, and have had the benefit of oral argument.

By reason of the view we have of this case, it is not necessary to go into a dissertation concerning whether or not the mere crossing over a yellow line by the defendant as he drove south on a divided highway, which line was a no-passing line, the inside lane being used for traffic merging into Highway 66, constituted, without more, a violation of the law. This for the reason that Robert Duckert, member of the Oklahoma Highway Patrol, stationed at Tulsa, testified on direct examination that at about 11:15 A.M. on November 10, 1955, he observed defendant driving south on Highway 66; that at the time Trooper George Moore was with him. He further testified:

"Q. When or where did you first see the defendant, or the automobile in which you later determined that the defendant was riding or driving? A. The first time that I saw the vehicle, was just north of the 51st Street by-pass bridge, approximately one (1) block.

"Q. How fast was the vehicle going at that time? A. Around fifteen miles an hour.

"Q. How was the vehicle proceeding at that time? A. What do you mean?

"Q. Was it proceeding in a normal manner? A. It was going at a very low rate of speed, and swerving or weaving back and forth across the road."

On cross-examination by the county attorney Officer Duckert stated that the car he observed was being driven south; that he ascertained that the defendant Moore was driving it, and that there was another man in the car with defendant. Said he:

"Q. After you stopped him, did you have a conversation with him? A. Yes.

"Q. Would you relate that conversation, please? A. We stopped the subject and had him step to the rear of his car, and we talked to him. We asked him where he was going, and he said, 'Home', and we asked him where he lived and he said 'North Lewis', and we asked him where he thought he was driving—in which direction and on which street, and he said 'traveling east on Mohawk Boulevard.'"

Witness further stated that it was his opinion that defendant at the time he stopped him and had him get out of his

car, was very much under the influence of intoxicants. It was his opinion that both defendant and his passenger were drunk. He further stated that when they stopped him, the defendant was about ten miles from where he stated he thought he was.

State Highway Patrolman George Moore, who was with Officer Duckert at the time defendant was arrested, stated that he had listened to the testimony of Officer Duckert and remembered the incidents the officer had testified about, and that his recollection was exactly as Duckert's.

Highway Patrolman Bob Schultz testified to being in a patrol car just ahead of Officer Duckert's car at the time of the arrest of defendant. He was asked and answered as follows:

"Q. Is your recollection of the incident and of the conduct of the driver of the car which was stopped, in which Durad Moore was riding at that time, exactly the same as the testimony of the previous two officers? A. Yes."

On cross-examination Mr. Schultz testified:

"Q. What did you observe about the operation of the car? A. It weaved back and forth across the line and across the yellow center stripe.

"Q. What did you do? A. We pulled off on the shoulder and let the other unit behind us come up."

Officer Duckert on re-cross examination as to defendant's condition at the time of his arrest, stated:

"He was very much under the influence, sir. His balance was very bad and he could not walk without staggering; his speech was a little thick and it seemed like he was just lost."

He further said that he detected the odor of alcohol about defendant.

The defendant testified very briefly and denied that he was drunk or under the influence of intoxicating liquor at any time on November 10, 1955.

The question presented is: Did the officers on noticing a vehicle being driven very slowly, at a rate of about 15 miles an hour, and from one side of a one-way divided highway to the other, have authority to stop said motorist for the purpose of ascertaining whether there was anything wrong with the driver of the car, or the car? Obviously such slow driving, under the circumstances, though in a one-way zone, and swerving over the road, constituted a traffic hazard. The evidence shows that on stopping the defendant, incidental to such, the officers discovered that the defendant was very much under the influence of intoxicating liquor, and thereupon placed him under arrest. Such was not only their right, but their duty.

As a general proposition we have said that for the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed. Camp v. State, 70 Okl.Cr. 68, 104 P.2d 572.

Also in any number of cases this court has approved the stopping by officers of motorists whose method of driving and personal appearance have convinced the officers that the manner in which the vehicle was being driven made it a menace to other motorists or the traveling public. Speeding, driving at an unusually slow rate, or from one side of the road to the other are certainly grounds for an officer to stop the motorist involved whatever the reason for such operation of the involved vehicle. Raper v. State, 96 Okl. Cr. 18, 248 P.2d 267; Webster v. State, 96 Okl.Cr. 44, 248 P.2d 646; Paty v. State, 97 Okl.Cr. 111, 259 P.2d 330; Hodge v. State, 97 Okl.Cr. 73, 258 P.2d 215; O'Dell v. State, 80 Okl.Cr. 194, 158 P.2d 180.

The judgment and sentence of the court of common pleas of Tulsa County is affirmed.

JONES, P. J., and BRETT, J., concur.